## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARILIX VILLANUEVA PÉREZ; LUIS ANGEL ROMÁN PEÑA,<br><br>**Plaintiffs**<br><br>v.<br><br>HOSPITAL DAMAS INC.; DR. HELDER HERNÁNDEZ RIVERA, his wife JANE DOE and their CONJUGAL PARTNERSHIP; DR. JENNIFER VARGAS SANTOS, her husband JOHN DOE and their CONJUGAL PARTNERSHIP; CARIBBEAN ELECTROPHYSIOLOGY SERVICES INC.,<br><br>**Defendants.** | CIVIL NO. 23-01336<br><br>**PLAINTIFFS DEMAND TRIAL BY JURY** |

### COMPLAINT

**TO THE HONORABLE COURT:**

    **COME NOW**, Plaintiffs Marilix Villanueva Pérez and Luis Angel Roman Peña through their undersigned counsel and, very respectfully, **STATE, ALLEGE,** and **PRAY** as follows:

    **I.    NATURE OF THE ACTION AND JURISDICTION**

    1.1    This is a civil action to recover damages against the Defendants pursuant to Arts. 1536, 1540 and 1541 of the Puerto Rico Civil Code of 2020, for the wrongful acts and/or omissions described herein.

    1.2    Subject matter jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship amongst the Plaintiffs, citizens of Florida, and the Defendants, all citizens of Puerto Rico; and because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

    1.3    Venue is proper under 28 U.S.C. § 1391 inasmuch as all or a substantial part of the events or wrongful acts and/or omissions giving rise to the causes of action herein occurred in the

judicial district of Puerto Rico. Further, venue is also proper in this judicial district pursuant to 28 U.S.C. § 1392, because there is complete diversity between the parties.

  1.4  Plaintiffs demand trial by jury for all causes of action set forth herein.

## II.  THE PARTIES

  2.1  Plaintiff **Marilix Villanueva Pérez** was the daughter of Maribel Pérez Santiago (hereinafter, "Patient") and citizen of the state of Florida. Her physical and postal address is 7572 Muscovy Dr, Lakeland, FL 33810.

  2.2  Plaintiff **Luis Angel Román Peña** is married to Marilix Villanueva Pérez and was the Patient's son-in-law since 2005. He is citizen of the state of Florida. His physical and postal address is 7572 Muscovy Dr, Lakeland, FL 33810.

  2.3  Codefendant **Hospital Damas Inc.** (hereinafter, "**Hospital Damas**") is a corporation organized under the laws of the Commonwealth of Puerto Rico, registry number 17442. Hospital Damas's physical address is 2213 Ponce Bypass, Ponce, 00717. Its telephone number is 787-840-8686.

  2.4  Codefendant **Dr. Helder Hernández Rivera** (hereinafter, "**Dr. Hernández Rivera**") is a Cardiac Electrophysiology Specialist in Ponce, Puerto Rico. The physical address of his medical office is Hosp. San Lucas 1 St Floor 200-76 Carr. 14 Ave Tito Castro 917 Ponce, Puerto Rico.

  2.5  Upon information and belief, Dr. Hernández Rivera was married to codefendant **Jane Doe** during the relevant time period. A **Conjugal Partnership** existed between them, which is also included as a codefendant in this case. At all relevant times, Dr. Hernández Rivera and his wife have been domiciled in Puerto Rico.

  2.6  Codefendant **Dr. Jennifer Vargas Santos** (hereinafter, "**Dr. Vargas Santos**") is a Cardiac Electrophysiology Specialist in Ponce, Puerto Rico. The physical address of her medical office is Hosp. San Lucas 1 St Floor 200-76 Carr. 14 Ave. Tito Castro 917 Ponce, Puerto Rico.

2.7     Upon information and belief, Dr. Vargas Santos was married to codefendant **John Doe** during the relevant time period. A **Conjugal Partnership** existed between them, which is also included as a codefendant in this case. At all relevant times, Dr. Vargas Santos and her husband have been domiciled in Puerto Rico.

2.8     Codefendant **Caribbean Electrophysiology Services Inc.** (hereinafter, "**CES**") is a corporation organized under the laws of the Commonwealth of Puerto Rico, registry number 442252. CES' mailing address is PO Box 283, Coamo, PR, 00769.

### III.    FACTUAL AVERMENTS COMMON TO ALL CAUSES OF ACTION

3.1     Plaintiffs reproduce and reaffirm as if alleged herein each one of the preceding allegations.

3.2     At all relevant times, Mrs. Maribel Pérez Santiago (previously defined as, the "Patient"), was a 58-year-old female patient of Dr. Hernández Rivera and/or CES.

3.3     Ms. Pérez Santiago had normal cardiac structure and function and had premature ventricular contractions (PVCs) that were symptomatic, but not life-threatening.

3.4     On May 27th, 2022, the Patient discussed with Dr. Hernández Rivera, at the offices of CES, her decision to proceed with a catheter ablation to eliminate these PVCs.

3.5     Upon information and belief, Dr. Hernández Rivera is an employee or an independent contractor of CES.

3.6     Dr. Hernández Rivera, however, did not explain the full length of the risks involved with the surgery to the Patient and, as such, did not obtain an adequate informed consent.

3.7     The surgery was scheduled for June 15th, 2022, at the Hospital Damas in Ponce.

3.8     Upon information and belief, on June 15th, 2022, Dr. Hernández Rivera had medical privileges at Hospital Damas in Ponce.

3.9     Upon information and belief, on June 15th, 2022, Dr. Hernández Rivera belonged to the medical staff at Hospital Damas in Ponce.

3.10    On June 14th, 2022, the Patient appeared for her pre-admission at the Hospital Damas in Ponce.

3.11    On June 15th, 2022, the Patient arrived at hospital accompanied by her daughter Lydmar Villanueva at approximately 8:00 am.

3.12    As part of the instructions given to the Plaintiff before the procedure, the Patient had been fasting since the previous day.

3.13    At approximately 1:30 p.m. the Patient was admitted to surgery; at approximately 3:30 p.m. the process began; and at approximately 5:30 p.m. Dr. Hernández Rivera told the Plaintiff that the procedure had been a complete success.

3.14    During procedure, access was obtained in both the right and left femoral veins to insert sheaths through which the catheters could be advanced to the heart for mapping and ablation of the PVCs.

3.15    The PVCs were successfully mapped and ablated in the septal aspect of the right ventricular outflow tract.

3.16    After the procedure, the catheters and sheaths were removed, and the Patient had to lie flat to prevent bleeding from these sites.

3.17    Dr. Hernández Rivera did not order any anticoagulant medication before the surgery took place.

3.18    The Patient was not administered with any anticoagulant medication by Hospital Damas' staff prior to the surgery.

3.19    Dr. Hernández Rivera did not order any anticoagulant medication after the surgery took place.

3.20    The Patient was not administered with any anticoagulant medication by Hospital Damas' staff after the surgery took place.

3.21 After the procedure was completed, Dr. Jennifer Vargas Santos, specialist in internal medicine, remained in charge of the Patient.

3.22 Upon information and belief, on June 15th, 2022, Dr. Jennifer Vargas Santos had medical privileges at Hospital Damas in Ponce.

3.23 Upon information and belief, on June 15th, 2022, Dr. Jennifer Vargas Santos belonged to the medical staff at Hospital Damas in Ponce.

3.24 Dr. Jennifer Vargas Santos was assigned to the Patient by Hospital Damas.

3.25 Dr. Vargas Santos did not order any anticoagulant medication after the surgery took place.

3.26 The Patient was placed on prolonged bed rest.

3.27 There is no documentation in the medical record of any prophylaxis applied to prevent deep vein thrombosis (DVT).

3.28 The Patient remained in the recovery room between approximately 5:30 pm to 7:30 pm with her daughter.

3.29 The Patient remained bedridden between 3:30 pm on June 15th, until 8:30 am on June 16th, 2022.

3.30 During the morning of June 16th, 2022, the Patient presented fatigue problems.

3.31 At approximately 1:10 PM, the nurses informed the Patient and her daughter that discharge was about to be authorized.

3.32 Before leaving, however, the Patient asked for assistance to go to the bathroom. As the Patient began to walk, she hunched over, clutched her chest, and began gasping for air.

3.33 On June 16th, 2022, the Patient suffered a sudden cardiac arrest.

3.34 The sudden cardiac arrest was ultimately determined to be caused by a pulmonary embolus (blood clot to the lung resultant from a DVT).

3.35    Due to the situation, a doctor and a group of nurses intervened and performed cardiopulmonary resuscitation (CPR).

3.36    An hour after the cardiac arrest, Dr. Alejandro López Mas, an interventional cardiologist, approached the Patient's daughter and told her: "I'm sorry to meet you under these circumstances, but your mother is no longer with us."

3.37    Between 5 to 10 minutes after, a resident doctor, Dr. Rodríguez, came out and told the daughter that they had found a weak pulse and that the Patient would be admitted to the Intensive Care Unit ("ICU").

3.38    The Patient remained at the ICU until June 22nd, 2022.

3.39    Dr. Hernández Rivera gathered the Patient's daughters on Wednesday, June 22nd, 2022, to explain that the Patient was without brain activity, and that they would proceed to perform a brainstem test.

3.40    Thereafter, Dr. Hernández Rivera told them that the Patient had no brain activity. The Patient was declared brain dead on June 22nd, 2022 at approximately 10:33 am.

3.41    The Patient had developed brain edema and ultimately passed away as the result of the complications from the pulmonary embolus.

3.42    The failure to order and administer anticoagulant medication before and/or after the surgery took place predictably resulted in the formation of the Patient's pulmonary embolus and subsequent DVT.

3.43    The failure to provide adequate prophylaxis against a DVT in the Patient, who was not mobile after a surgical procedure, predictably resulted in the formation of the Patient's pulmonary embolus and subsequent DVT.

### IV.    CLAIMS FOR RELIEF
### COUNT I – MEDICAL MALPRACTICE

4.1     Plaintiff reproduces and reaffirms as if alleged herein each one of the preceding allegations.

4.2     The applicable standard of care required Dr. Hernández Rivera to obtain an adequate informed consent prior to submitting the patient to a medical procedure. Dr. Hernández Rivera failed to do so, thus deviating from the applicable standard of care.

4.3     The applicable standard of care further required Dr. Hernández Rivera and/or Dr. Vargas Santos to administer Heparin and/or anticoagulant medication before and/or after the procedure. Dr. Hernández Rivera and Dr. Vargas Santos failed to do so, further deviating from the medical standard of care.

4.4     The standard of care also required Dr. Hernández Rivera and/or Dr. Vargas Santos to apply adequate prophylaxis to prevent deep vein thrombosis (DVT). However, both Dr. Hernández Rivera and Dr. Vargas Santos failed to do so, further deviating from the medical standard of care.

4.5     Dr. Hernández Rivera failed to provide proper instructions post-surgery to the medical, nursing and/or other staff of Hospital Damas.

4.6     Dr. Hernandez Rivera's and Dr. Vargas Santos' acts and/or omissions in this case were the proximate cause of the Patient's pulmonary embolus, DVT, and ultimate death.

4.7     Had Dr. Hernández Rivera and Dr. Vargas Santos properly treated, and managed Plaintiff's pre and/or post-surgery treatment in this case, Patient would not have developed pulmonary embolus, DVT and other complications, and would not have suffer a cardiac arrest.

4.8     Had Dr. Hernández Rivera and Dr. Vargas Santos provided Patient and Hospital Damas' staff with adequate post-surgery instructions, Patient would not have

developed pulmonary embolus, DVT and other complications, and would not have suffer a cardiac arrest.

### COUNT II – OBJECTIVE LIABILITY AND VICARIOUS LIABILITY

4.9   Plaintiff reproduces and reaffirms as if alleged herein each one of the preceding allegations.

4.10   Dr. Hernández Rivera was an employee or an independent contractor of CES.

4.11   As described in the preceding paragraphs, Dr. Hernández Rivera committed medical malpractice in this case, causing damages to Plaintiffs.

4.12   CES is objectively and/or vicariously liable for the acts and/omissions of Dr. Hernández Rivera in this case.

4.13   Hospital Damas assigned Dr. Vargas Santos as the physician who would be taking care of the Patient after the surgical procedure. Hospital Damas further employed all of the nursing staff that treated the Patient throughout her hospitalization.

4.14   As described in the preceding paragraphs, Dr. Vargas Santos committed medical malpractice in this case, causing damages to Plaintiff.

4.15   Hospital Damas is objectively and/or vicariously liable for the acts and/omissions of Dr. Vargas Santos in this case.

4.16   CES and Hospital Damas are further jointly and severally liable for the acts and/omissions of Dr. Hernández Rivera and/or Dr. Vargas Santos in this case.

### COUNT III – DIRECT LIABILITY

4.17   Plaintiff reproduces and reaffirms as if alleged herein each one of the preceding allegations.

4.18    Hospital Damas was negligent in not having the appropriate protocols, rules or regulations designed towards providing quality care to its patients and/or designed to reduce patient harm or risk and avoid situations as the one described herein.

4.19    Hospital Damas failed to require Dr. Hernández Rivera and/or Dr. Vargas Santos to keep up to date through professional advancement studies.

4.20    Hospital Damas failed to monitor the labor of Dr. Hernández Rivera and/or Dr. Vargas Santos and further failed to act in the face of an obvious act of malpractice, such as the one suffered by the Patient in this case.

4.21    Hospital Damas was negligent in its duty *in vigilando* and *in instruendo* regarding both Dr. Hernández Rivera and Dr. Vargas Santos.

4.22    The above omissions by Hospital Damas are the proximate cause of the Patient's demise in this case.

4.23    As such, Hospital Damas is directly liable to Plaintiffs for its negligent acts and omissions.

### COUNT IV - PHYSICAL DAMAGES

4.24    Plaintiff reproduces and reaffirms as if alleged herein each one of the preceding allegations.

4.25    As a direct consequence of all the acts and/or omissions of codefendants, the Patient suffered pain and physical damages.

4.26    As a direct consequence of all the acts and/or omissions of all codefendants, Plaintiff was hospitalized in the ICU for six (6) days and, subsequently, died from the medical conditions caused by all of the co-defendants in this case.

4.27    The acts and/or omissions of all codefendants in this case were the proximate cause of the Patient's physical damages in this case.

4.28   The Patient's physical damages in this case are estimated in $300,000.00.

4.29   All codefendants are jointly and severally liable for the Patient's physical damages in this case.

4.30   Inasmuch as the Patient is deceased, her physical damages are inherited by her estate, herein represented by her daughter Plaintiff Marilix Villanueva Pérez.

### COUNT V – MORAL DAMAGES

4.31   Plaintiffs reproduces and reaffirms as if alleged herein each one of the preceding allegations.

4.32   As a direct consequence of all the acts and/or omissions of codefendants, Plaintiffs have suffered severe emotional distress, anxiety, discouragement, desperation, and lack of satisfaction in living.

4.33   The acts and/or omissions of all codefendants in this case were the proximate cause of Plaintiffs' mental anguishes in this case.

4.34   Plaintiffs' pain and emotional distress in this case are estimated of $750,000.00.

4.35   All codefendants are jointly and severally liable for Plaintiffs' moral damages in this case.

### COUNT VI – COLLATERAL SOURCE DOCTRINE

4.36   Plaintiffs reproduces and reaffirms as if alleged herein each one of the preceding allegations.

4.37   The Patient was entitled to recover, under the collateral source doctrine, the medical expenses that were covered by her medical insurer, in connection with the facts alleged in this Complaint. These expenses, in turn, are calculated in an amount no less than $15,000.00.

4.38   All codefendants are jointly and severally liable for Plaintiff's damages in this case.

4.39    Inasmuch as the Patient is deceased, her special damages are inherited by her estate, herein represented by her daughter Plaintiff Marilix Villanueva Pérez.

## V.    JURY DEMAND

Plaintiffs hereby demands a trial by jury of all issues so triable of right by a jury set forth in this Complaint.

## VI.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs very respectfully requests a verdict against all co-defendants, directing them to pay the Plaintiffs the following amounts, for which they are jointly and severally liable:

a) An amount no less than $300,000.00 for the Patient's physical damages;

b) An amount no less than $750,000.00 for Plaintiffs' mental anguishes and physical pain;

c) An amount no less than $15,000.00 to recover medical expenses that have been and will be covered by the Patient's medical insurer; and

d) All litigations costs and expenses, and a reasonable sum for attorneys' fees in favor of the Plaintiffs.

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 21st day of June 2023.

**GONZÁLEZ & MARTÍNEZ, PSC**
Attorneys for Plaintiffs

        1509 López Landrón, Bldg.
Seventh Floor
San Juan, PR 00911-1933
Tel.: (787) 274-7404
email: jmartinez@gmlex.net

s/Juan M. Martínez-Nevárez
**USDCPR 221108**